GILES A. MEACHAM *vs.* THE FITCHBURG RAILROAD COMPANY.

The "three nearest towns not interested," from which jurors are to be taken to estimate the damages caused by the laying out of a highway or railroad, are the three towns nearest to and exclusive of the town in which the land lies, over which the highway or railroad is laid.

A sheriff's jury, to assess damages for land taken for a highway or railroad, may be summoned by the constables of the several towns, from whence they are taken, or partly by such constables, and partly by the deputy sheriff by whom the warrant is executed.

The mortgagee of land taken for a railroad need not be made a party to proceedings by the mortgagor for the assessment of damages, provided he gives his assent thereto by a writing filed in the case.

The want of proper parties, to a proceeding before a sheriff's jury, for the assessment of damages for land taken for a highway or railroad, must be objected before the commissioners, upon the application for such jury.

In estimating the damages for land taken for a highway or railroad, any direct and peculiar benefit or increase of value, accruing therefrom to land of the same owner adjoining or connected with the land taken, and forming part of the same parcel or tract, is to be considered by the jury and allowed by way of set-off; but not any general benefit or increase of value received by such land in common with other lands in the neighborhood; nor any benefit to other land of the same owner, though in the same town.

The time, at and from which the benefit accruing to the owner of land taken for a highway or railroad is to be estimated, in assessing his damages for such taking, is that of the actual location.

This was an appeal from a judgment of the court of common pleas, accepting the verdict of a jury, summoned at the request of the petitioner, to revise the damages awarded to him by the county commissioners, by reason of the taking of his land in Watertown, in this county, by the respondents, for the construction of a branch railroad to that town.

The questions submitted to the court arose upon the proceedings at the trial before the jury, and are thus stated in the report thereof by Seth Ames, esquire, the presiding officer.

Before proceeding with the trial, (the jurors summoned being in attendance at the time and place appointed,) it was moved by the respondents that the jurors should not be empannelled for the following reasons : —

1st. Because none of the jurors were drawn, summoned or returned from the town of Watertown, in which the lands alleged to have been injured by the laying out of the railroad of the respondents are situated; the town of Watertown having no interest in the question to be tried by the jury.

2d. Because certain of the jurors, namely, those from the city of Cambridge, and from the town of Brighton, were summoned by constables of said city and town, respectively, and not by the deputy sheriff who executed the warrant.

3d. Because certain of the jurors, namely, those from the town of West Cambridge, were summoned by the deputy sheriff who executed the warrant, and others of them by constables of Cambridge and Brighton.

This motion was overruled, and the respondents excepted.

4th. The jury were thereupon empannelled and sworn,

and the trial proceeded; and it being made to appear, that the lands described in the petition had been mortgaged as collateral security for a debt to Luke Forbes and Samuel Stickney, and that neither of the mortgagees had been summoned in to become a party, and there being no evidence that the mortgage had been paid or released, the respondents objected to any further proceeding by the jury, to estimate the damages alleged to have been sustained in the real estate described in the petition. But as the petitioner produced and filed in the case a written paper signed by the mortgagees,* whereby they consented to the assessment and award of damages to the petitioner, and waived all objection to the proceedings in his behalf, the presiding officer overruled the objection, to which the respondents excepted.

5th. The respondents then proved, that the petitioner, at the time of the laying out of the railroad, and ever since, was the owner of certain other lands and buildings in Watertown, near but not adjoining the lands described in the petition; they then offered evidence for the purpose of showing, that since the laying out and construction of the railroad, and in consequence thereof, the lands and buildings of the petitioner, other than the lands described in the petition, and separate therefrom, as aforesaid, had increased in value to the petitioner. But the evidence so offered being objected to, the presiding officer decided that it was inadmissible; and to this decision the respondents excepted.

6th. Being requested by the parties to direct the jury, as to the rules of law by which they were to be governed, in

---

* The following is a copy of this paper : —

" The undersigned mortgagees of the land situated in Watertown in the county of Middlesex, belonging to Giles A. Meacham, through which the Fitchburg Railroad Corporation have located and constructed their Watertown Branch Railroad, hereby signify their assent to the assessment and award of the damages done or caused to said land, by the jury who are summoned on the petition of said Meacham, to estimate said damages ; and we do hereby waive all objection to the proceedings in said Meacham's behalf, and to the assessment and award to him of the full amount of said damages. Dated at Watertown, this thirteenth day of August, in the year eighteen hundred and forty-seven."

estimating the petitioner's damages, after receiving the testi-
mony on both sides, the presiding officer instructed the jury,
(among other things,) that if they were satisfied that the
laying out and construction of the respondents' railroad had
created or occasioned any benefit or advantage to the lands
of the petitioner, described in his petition or immediately
adjoining or connected therewith, rendering the part not
actually occupied by the respondents more convenient or
useful to the petitioner, or giving it some peculiar increase
of value in the market, as compared with other lands gen-
erally in the vicinity, it would be their duty to allow for such
benefit or increase of value by way of set-off, in favor of the
respondents; but that, on the other hand, if the construc-
tion of the respondents' railroad, by increasing the conven-
ience of Watertown generally as a place of residence, and
by its anticipated and probable effect or influence in increas-
ing the population, business and general prosperity of the
place, had been the occasion of an increase in the saleable
value of real estate generally near their depot, including the
petitioner's said lands, and thereby occasioning a benefit or
advantage to him in common with other real estate owners
in the vicinity, this benefit would be too contingent, indirect
and remote, to be brought into consideration in this question
of damages to a particular parcel of land. To these instruc-
tions the respondents excepted.

7th. The presiding officer also instructed the jury, that for
the purposes of this trial, the land might be considered as
taken by the respondents, when their track was actually
staked out, and its precise location thereby indicated; that
any benefit to the petitioner's property, in order to be allowed
to the respondents, by way of set-off, must be some increase
upon the value which it had at the time of such taking, and
not at any previous time; and that no allowance was to be
made for any effect produced by the general expectation that
there was to be such a railroad, or by the passage of its
charter. And to this instruction also the respondents ex-
cepted.

*E. R. Hoar,* for the respondents.

*E. Buttrick* (with whom was *J. J. Clarke*), for the petitioner.

DEWEY, J.   The first objection, stated in the bill of exceptions, that none of the jurors were returned from the town of Watertown, was directly overruled in the case of *Wyman* v. *Lexington & West Cambridge Railroad Co.* 13 Met. 316, and is not further urged.   The next objection to the validity of these proceedings, the summoning of the jurors by a constable, is certainly one which is not free from difficulty.   It was much considered by us in the case just alluded to.   The jury, in that case, were summoned by the sheriff, or his deputy, and the question was as to the legality of such service.   This opened the general question, and in the opinion given in that case, while we sustained the proceedings, we did not express any thing adverse to the right of summoning jurors by a constable as in other cases.   The various provisions of the revised statutes, on this subject, are to some extent apparently conflicting.   By *c.* 39, § 57, the proceedings are to be the same as in the case of highways; and by *c.* 24, § 18, which provides for the summoning of jurors in cases of highways, it is enacted, that the jury shall be summoned by the sheriff or his deputy; but in § 19, it is provided, that the jury shall be " drawn, summoned and notified as in other cases."   This latter section would embrace constables, as proper officers for summoning the jurors; that duty in ordinary cases devolving upon them.

In the present case, it appears that the requisition was duly issued by the sheriff upon the selectmen of the various towns, requiring the drawing of the jurors; that the sheriff gave the proper order as to the time of the assembling of the jury; and that all the error suggested upon the most strict construction of the statute was, that the jurors were notified by a constable of the time and place of the hearing.   The jurors thus notified having actually attended, the objection, as will readily be seen, is a mere matter of form.   Their proper selection being secured, and the time and place of their meeting being properly appointed, it would seem quite immaterial, whether the jurors attended upon notice by a

deputy sheriff or a constable, or even voluntarily, without any formal notice. It seems to us, therefore, that it is no valid objection to this verdict, that some of the jurors were notified by a constable. It is within the provisions of the nineteenth section of the twenty-fourth chapter, taking the same literally, although not probably the mode contemplated by the legis lature. As heretofore stated, we held in the case of *Wyman* v. *Lexington & West Cambridge Railroad Co.* that the eigh teenth section authorized the summoning of the jurors by the sheriff or his deputy ; and we are of opinion, that this is more obviously within the statute provisions. But the lan guage of the nineteenth section goes somewhat further, and apparently authorizes the summoning of jurors in these cases by a constable. In view of these statute provisions, relating to the irregularity suggested, we do not feel authorized to set aside this verdict on the ground that the jurors were notified by a constable.

The next objection is virtually disposed of by the view which we have taken of the one preceding. It does not vary the result, that the jurors from two of the towns were noti fied by a constable, and the others by a deputy sheriff. The latter mode was clearly legal, and, to the extent it was adopt ed, does not vitiate the notice to the other jurors.

In reference to the fourth objection, as to an outstanding mortgage, the court are of opinion, that the petitioners hav ing produced and filed a paper signed by the mortgagees, assenting to the assessment and award of damages to the petitioners, and waiving all objections to the proceedings by reason of their holding such mortgage, this objection was removed.

As to the omission to summon the mortgagees, we think that the whole matter of new parties is more properly cog nizable before the commissioners, upon a hearing before issuing a warrant for a jury. Upon the application for such jury, notice is given to the adverse party, who may appear and interpose all valid objections to the right of the petition ers to recover damages or to have them assessed by a jury.

The most important and difficult question in the case is

that which arises upon the ruling of the presiding officer, as to submitting to the jury, in reduction of damages, the fact that the petitioner was the owner of other lands and buildings in Watertown, near to but not adjoining or parcel of the land described in the petition. This subject is confessedly one of difficulty. The general doctrine was very broadly advanced in *Commonwealth* v. *Coombs*, 2 Mass. 489, 492, that the benefit occasioned by laying out a highway to the other property of the party seeking to recover damages for his land actually taken should be considered in reduction of the damages for the land taken. The Rev. Sts. *c.* 24, § 31, in like manner, provide generally for an allowance by way of deduction for such advancement in value of other property.

That there must be some limitation of the proposition, that the respondents may show in reduction of damages any collateral benefit which the petitioner has received in his other property, seems quite obvious. The party, whose land has been taken for a railroad, has a right, in common with his other fellow-citizens, to the benefit arising from the general rise of property in the vicinity, occasioned by the establishment of the railroad and the facilities connected therewith.

It would operate with great inequality, to hold that where there are various individuals, each owning large trading or manufacturing establishments in the immediate vicinity of a railroad, but without being adjoining to or connected with the located limits of such railroad, one of whom is the owner of a parcel of land, situate in another part of the town, over which the railroad is actually located, that as to the latter, he is, by way of reduction of damages for his land thus taken, to be charged for all the incidental benefits, which he receives from the location of the railroad in the vicinity of his other land and establishment, while his neighbor, who is equally benefited, is exempt from any contribution to this object.

It is difficult to draw the line with precision, and at the same time to establish a rule, which will do equal justice to all concerned. The rule which was taken at the hearing

before the jury, we think, approximates as nearly to the standard as any that can be adopted. It embraces the land as to which damages are claimed, and any land of the petitioner adjoining, or connected therewith as one parcel or tract of land, and if in any portion of such land the location of the railroad has occasioned a rise in value, and the petitioner has received any peculiar benefit from the location of such road, it is the duty of the jury to make a deduction, by way of set-off, and a reduction of damages on account of such advancement in value of the remaining portion of the lot or parcel of land. Thus limited to the land adjacent to that taken for the railroad, or connected as one tract or parcel of land therewith, the rule will be found to be reasonable in itself and of easy application. The great and leading principle, to authorize such reduction of damages, is the direct benefit, or increase of value to the remaining part of the tract or parcel of land, by reason of the railroad's passing through the lot or tract, as to which the damages are claimed. We approximate very nearly, in this way, to the rule of direct benefit, or actual increase of value in the adjacent land, and exclude the more uncertain and fanciful estimation of anticipated advantages to other parcels, more or less remote, and which share only in the common benefit of the lands of the citizens generally.

The further instructions to the jury upon this point seem to have been entirely correct, and in accordance with the principle of the other ruling. The respondents are not to have the benefit of any increase in value of the petitioner's adjacent land, so far as he has been benefited by the railroad, merely in common with all the citizens of the neighborhood or village, by the anticipated general rise of property, by reason of the railroad's passing through the town and in the vicinity of their lands. It is only the increased value of the land of the petitioner, arising from the location of the road over some part of it, which is to be taken into consideration. If such location over the land of the petitioner has raised the value of his adjacent lands, then a reduction or offset is to be allowed the respondents on that account.

It is the increase of value occasioned by the location, and of course has reference to the state of things existing at the time when the land is taken by the location. The presiding officer directed the jury to take the earliest period indicating such location, namely, " the staking out of the road." This being most favorable for the respondents, it is unnecessary to decide, whether that period, or the subsequent one of the actual official return of the real location, would have been, strictly speaking, the more correct. The principle adopted was the right one, that the actual location of the road was the period of time in reference to which the increased value of the adjacent land was to be estimated with a view to the set-off. Upon the whole matter, the court are of opinion, that the verdict of the jury was properly accepted; and that the exceptions taken to the proceedings were rightly over ruled by the court of common pleas.